## Bierly v. John Hancock Mutual Life Insurance Company

*Ralph B. Pinskey*, for plaintiff.
*Harvey Freedenberg* and *Robert L. Rubendall*, for defendants.

WICKERSHAM, *J.*, December 13, 1979—This matter is before the court en banc on preliminary objections raised by defendants John Hancock Mutual Life Insurance Company and Pick Hotels Corporation to the complaint of plaintiff Roland Bierly, Jr. The facts giving rise to the instant litigation are as follows: In March of 1973, plaintiff, Roland Bierly, Jr., was hired by defendant Pick Hotels as a supervising engineer. One of Pick's employes,

Mrs. Smith, informed plaintiff that he would be eligible for participation in a group insurance plan that included disability income insurance. Furthermore, he was told that he would be eligible to participate 90 days after he was hired. Ninety days elapsed and plaintiff enrolled in the plan and Pick Hotels deducted premiums from his paycheck. Plaintiff requested a booklet summarizing the benefits of the plan, but was informed by Mrs. Smith that all such booklets had been destroyed in the June 1972 flood. Nevertheless, Mrs. Smith orally summarized the policy, stating that if any employe covered by the plan suffered disability, he would be entitled to 50 percent of his salary. Mrs. Smith did not, however, explain to plaintiff that the group insurance plan contained a reduction of benefits provision, which provided that long-term disability benefits would be reduced by any income benefits recoverable under any government plan or program. Plaintiff had advised Pick Hotels on his application form that he was formerly employed by Penn Central; hence, he was also eligible for disability income benefits under the Railroad Retirement Board.

Thereafter, in October 1974, plaintiff suffered from blood clots which eventually rendered him permanently disabled. His last day of work was February 17, 1975, and his employment with Pick Hotels formally ended March 31, 1975. Finally, in May of 1975, two years after he began work at Pick, and almost three years after the 1972 flood, Pick Hotels delivered an insurance booklet to plaintiff which included an explanation of the reduction of benefits provision. In the meantime, plaintiff had applied for disability benefits with Pick's insurer,

Hancock, and the Railroad Retirement Board. Although Hancock did pay disability benefits to plaintiff from August 15, 1975, to May 31, 1977, it discontinued payments after learning that he also received Railroad Retirement Funds. In so doing, Hancock justified its refusal by citing the reduction of benefits provision contained in its group insurance contract with Pick.

Thereafter, on October 10, 1978, plaintiff commenced an action in trespass and assumpsit by filing a complaint against defendants Pick Hotels and John Hancock Insurance Company. The complaint consists of two counts: Count I, in assumpsit, alleges that defendants Pick and Hancock breached the provisions of May 17, 1921, P.L. 682, as amended, 40 P.S. §756.2(b)(2), and that plaintiff suffered damages as a result. Plaintiff also avers that he relied to his detriment upon Pick employe Smith's representations concerning the group insurance plan which made no mention of the reduction of benefits provision. In Count II, which is a trespass action against defendant Hancock alone, plaintiff alleges that defendant's refusal to pay benefits caused him to suffer mental anguish. Additionally, Count II demands punitive damages of Hancock based upon its alleged "wilful, malicious" and reckless conduct. Defendants filed preliminary objections in the nature of a demurrer to Count I of plaintiff's complaint; in addition, defendant Hancock filed a motion to strike Count II.

The basic theory of plaintiff's complaint is premised upon 40 P.S. §756.2(b)(2), which provides:

"(b) Each group accident and sickness policy shall contain in substance the following provisions: . . .

"(2) A provision that the insurer will furnish to the policyholder, for delivery to each employe or member of the insured group, an individual certificate setting forth, in summary form, a statement of the essential features of the insurance coverage of such employe or member and to whom benefits thereunder are payable. If dependents are included in the coverage, only one certificate need be issued for each family unit."

Plaintiff claims that defendants Pick and/or Hancock have caused him monetary damage by their failure to comply with the above-quoted statute in that the insurer (Hancock) failed to furnish the policy holder (Pick), for delivery to each employe (plaintiff), an individual certificate, setting forth, in summary form, a statement of the plan's essential features.

According to well-known authority: "The question raised by the demurrer is whether upon the facts averred in the pleading being attacked the law says with certainty that the claim or defense is no good . . . if there is any doubt as to whether the demurrer should be sustained it should be resolved against the objecting party." 4 Standard Pa. Pract. §25, 36-37, and cases cited therein. Furthermore, it has been held that a demurrer should be sustained only where it appears with certainty that the law will not permit plaintiff to recover: Papieves v. Kelly, 437 Pa. 373, 381, 263 A. 2d 118, 122 (1970). With these principles in mind, we shall review the preliminary objections of each defendant.

First, defendant Pick argues that plaintiff is a mere third party beneficiary with regard to the group insurance contract entered into between Hancock and Pick; it follows, therefore, that whatever contractual rights the plaintiff may have are

limited to those expressly created in the policy. In Layman v. Continental Assurance Co., 416 Pa. 155, 205 A. 2d 93 (1964), the court held that the primary contracting parties in group insurance plans are the insurance company and the employer; thus, the employe's status is that of a third party beneficiary. Although we agree with defendant Pick that this is a correct statement of the law we do not find it persuasive. The issue raised by plaintiff's complaint is whether defendants breached their statutorily imposed duty to furnish a certificate summarizing the essential features of the group insurance policy in which plaintiff enrolled. Plaintiff's action is not based upon the insurance contract itself; rather, it is based upon the breach of a duty imposed by statute.

Next, defendant Pick maintains that the parol evidence rule bars plaintiff from adding to or varying the terms of the group's insurance contract entered into by Pick and Hancock. In support of this contention, Pick cites Rosner v. Zurich Ins. Co., 197 Pa. Superior Ct. 90, 177 A. 2d 30 (1962). In Rosner, plaintiff was a partner in a firm seeking group insurance coverage. He alleged that the insurance company's agent represented to plaintiff that his policy would cover partners and employes for any injury or sickness and the "occupational exclusion" in the policy was designed only to exclude workmen's compensation claims. In reliance on the agent's representation, the firm cancelled its Blue Cross-Blue Shield policy. When plaintiff sustained injuries disabling him from work, he filed a claim under the policy. The insurer refused payment on the grounds that his injury arose out of his employment and pointed to the "occupational exclusion" in the policy. Because plaintiff was a partner in the

firm, he was likewise ineligible for workmen's compensation benefits. The lower court sustained the insurer's preliminary objection to plaintiff's complaint based on the parol evidence rule; this decision was affirmed by the Pennsylvania Superior Court.

Although the Rosner case would superficially appear to bar plaintiff's cause of action, a more recent Pennsylvania Superior Court decision leads us to a different conclusion. In Hionis v. Northern Mutual Ins. Co., 230 Pa. Superior Ct. 511, 327 A. 2d 363 (1974), plaintiff was a tenant of a restaurant in which he made considerable improvements. He obtained insurance policies from defendants, insurance companies, and in his dealing with the agent for one company, plaintiff asked only that the new policy cover him for loss to the improvements. The insurance policies provided that the insurers' liability would be the actual cash value of damaged or destroyed improvements, if repaired or replaced within a reasonable time after a loss. If not so repaired or replaced, the policy provided for reduced coverage. The restaurant was thereafter destroyed by fire, and plaintiff did not replace the damaged improvements. The court there held that even where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him.

In the case at bar, according to plaintiff's allegations, he was never made aware of the reduction of benefits exclusion until after he authorized his employer to deduct premiums and even more importantly, he was only furnished with a certificate outlining the exclusion after he became disabled.

Under the circumstances of this case, we deem the Hionis decision to apply, and thus find that Pick's preliminary objection raising the parol evidence rule as a defense to be without merit.

We likewise find meritless Pick's fourth preliminary objection based upon plaintiff's failure to specifically allege that he acted or failed to act to his detriment on the basis of any material representation by defendant Pick or its agent Mrs. Smith. We think it is fair to infer from the allegations of the complaint that plaintiff would never have entered into the group insurance policy had he known of the reduction of benefits provision since he knew he was already eligible for benefits by virtue of his coverage under the Railroad Retirement Board's disability income plan.

Finally, defendant Pick argues that 40 P.S. §756.2(b)(2) merely places a duty upon the insurance company to furnish certificates concerning group plan coverage to the policyholder for delivery to employes. In other words, the insurer, Hancock, should be held liable rather than the employer-policyholder, Pick, which is only required to perform the "ministerial function" of passing on certificates to employes such as plaintiff. With this argument we cannot agree. The plain and unambiguous language of the statute places a duty upon *both* the insurer to provide, and the policyholder to deliver, a summary of the group insurance plan's features to the employe. To hold otherwise would effectively emasculate the clear intent of the Pennsylvania General Assembly in enacting this legislation.

Based upon the foregoing, we hold that plaintiff has indeed stated a cause of action against defend-

ant Pick Hotels Corporation. Next, we shall consider defendant John Hancock's preliminary objections to plaintiff's complaint.

First of all, Hancock says that it is insulated from liability since the "representations" and "advices" received by plaintiff from Pick's employe Smith cannot be imputed to Hancock since the employer-policyholder does not act as agent for the insurance company, citing Frankel v. Reliance Mutual Life Ins. Co., 199 Pa. Superior Ct. 295, 302, 184 A. 2d 305, 308 (1962). Although we agree with Hancock that this is a correct statement of the law, we do not find that it is applicable to the theory of plaintiff's complaint. Plaintiff here is not attempting to enforce a contract as explained to him by Pick's employer *minus* the reduction of benefits exclusion; instead, he is bringing suit to enforce the provisions of 40 P.S. §576.2(b)(2) which require the insurer to furnish an individual certificate to the policyholder for delivery to employes, setting forth the plan's essential elements. Hence, we deem Hancock's first preliminary objection to be without merit.

Secondly, Hancock argues that because reduction of benefits provisions are recognized as valid in Pennsylvania, the plaintiff is charged with notice thereof and is thereby precluded from recovery. (See, for example: Miller v. Prudential Ins. Co., 239 Pa. Superior Ct. 467, 362 A. 2d 1017 (1976).) Nevertheless, plaintiff's complaint does not attack the validity of such clauses; rather, plaintiff asserts Hancock's breach of its statutory duty to provide policy information to employes.

Finally, in defendant Hancock's motion to strike Count II of plaintiff's complaint, it is argued that Pennsylvania does not recognize a cause of action

in trespass for breach of an insurance contract. In Count II, plaintiff alleges that he suffered mental anguish as a result of Hancock's refusal to honor his claim for disability benefits. In D'Ambrosio v. Pa. Nat. Mut. Cas. Ins. Co., ___ Pa. Superior Ct. ___, 396 A. 2d 780 (1978), the Superior Court of Pennsylvania held that an insurer's refusal to pay an insured's claim for damages to his boat did not give rise to a cause of action against the insurer for intentional infliction of mental distress. Hence, the appellate court affirmed the lower court's sustaining of defendant's demurrer to plaintiff's suit for mental anguish and punitive damages. We therefore conclude that Count II of plaintiff's complaint against Hancock alone must be stricken.

## ORDER

And now, December 13, 1979, the preliminary objections in the nature of a demurrer to Count I of plaintiff's complaint by defendants Pick Hotels Corporation and John Hancock Mutual Life Insurance Company are hereby overruled.

It is further ordered that the preliminary objection in the nature of a motion to strike Count II of plaintiff's complaint by defendant John Hancock Mutual Life Insurance Company is hereby sustained.